IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL L. WAKEFIELD,     )
              )
       Plaintiff,   )
              )   CV 04-1860-MO
     v.        )
              )
JO ANNE B. BARNHART, Commissioner of )   OPINION AND ORDER
Social Security,        )
              )
       Defendant.     )

DAVID B. LOWRY
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223

   Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

STEPHANIE R. MARTZ
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

   Attorneys for Defendant

1 - OPINION AND ORDER

**MOSMAN**, District Judge:

**INTRODUCTION**

Plaintiff Michael Wakefield brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is affirmed.

**BACKGROUND**

Mr. Wakefield was born February 7, 1954. He completed high school and a plumbing course at a trade school. He worked as a journeyman plumber for over 25 years and has no other work experience. He stopped working on September 21, 2001, because of "pain, lack of mobility, all over my body all joints have arthritis." Tr. 115.[1]

Mr. Wakefield alleges disability beginning September 21, 2001, due to problems in the "right ankle, right foot, both heels, complete lower back, right shoulder, neck." He alleges these conditions cause pain with standing or sitting too long or walking. He claims the pain makes it difficult for him to concentrate.

Mr. Wakefield had insured status under the Social Security Act through March 31, 2002. He must show that he became disabled on or before that date to recover benefits under Title II. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

---

[1]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

2 - OPINION AND ORDER

# DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person over the age of eighteen is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Mr. Wakefield challenges the ALJ's findings at steps three and five of his decision.

At step three, the Commissioner must determine whether the claimant has impairments that meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments). If the ALJ determines that the claimant's impairments meet or equal a Listing, the Commissioner will find the claimant disabled without completing the remaining steps in the sequence.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a); Social Security Ruling (SSR) 96-8p.

At step five, the Commissioner must determine whether the claimant's RFC leaves him capable of performing any work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ's FINDINGS

The ALJ found that Mr. Wakefield's ability to work during the relevant time was limited by degenerative disc disease with stenosis of the lumbar spine, osteoarthritis of both knees, right foot drop, and chronic obstructive pulmonary disease (COPD) exacerbated by smoking. The ALJ found additional limitations related to substance abuse and multiple hernias, but concluded that these did not limit Mr. Wakefield before his insured status expired.

At step three, the ALJ found that Mr. Wakefield did not produce medical evidence establishing that his impairments meet or equal any condition in the Listing of Impairments.

The ALJ assessed Mr. Wakefield's RFC as follows:

> the claimant, as of and prior to his date last insured, retained the exertional residual functional capacity to lift ten pounds frequently and twenty pounds occasionally. He could stand for fifteen minutes and walk for fifteen minutes at a time for up to four hours total in an eight hour workday and could sit for thirty minutes at a time for up to six hours total in an eight hour workday. He was unable to climb any ropes, ladders or scaffolds but could occasionally climb stairs and ramps. He could occasionally balance, stoop, kneel, crouch and crawl. He was unable to be exposed to any hazardous environments such as unprotected height and machinery, work on uneven surfaces and could not be exposed to concentrated dust, fumes, odors and gases. He was limited to simple, repetitive, routine work.

Tr. 21.

At step five, the ALJ found that Mr. Wakefield's RFC did not preclude all work in the national economy. He identified examples of work Mr. Wakefield could perform drawn from the testimony of the impartial vocational expert (VE): telephone solicitor and surveillance system monitor. Accordingly, the ALJ concluded Mr. Wakefield was not disabled.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Mr. Wakefield contends the ALJ erred at step three by failing to find that his impairments combine to satisfy the regulatory criteria for Listing 1.04 *Disorders of the Spine*.

5 - OPINION AND ORDER

Mr. Wakefield asserts that the ALJ failed to accurately assess his RFC because he improperly evaluated Mr. Wakefield's testimony, the testimony of Mr. Wakefield's wife, the written statements of lay witnesses and the opinions of two physicians. He contends the ALJ neglected to consider the impact of his non-severe impairments, the side effects of his medications and whether he is able to work on a regular and continuing basis. He asserts that the ALJ erred by failing to call a medical expert to assess the onset of disability.

Mr. Wakefield challenges the ALJ's conclusions at step five on the grounds that he relied on inadequate testimony from the VE. Mr. Wakefield argues that the VE's testimony regarding the numbers of jobs in the sample occupations she identified lacked foundation. He asserts that the ALJ erred by ignoring documents Mr. Wakefield submitted which showed that certain government agencies lack data regarding the numbers of jobs in the national economy.

## I.   Listing of Impairments

Mr. Wakefield  contends the ALJ erred by failing to find that his combined impairments satisfy the regulatory criteria for Listing 1.04 *Disorders of the Spine*. He argues that the ALJ was required to call a medical expert to assess equivalency.

To satisfy the criteria for a Listing, the claimant must show that his medical condition meets or equals the Listing. If the claimant's medical condition is listed in the Listing of Impairments and the medical findings are at least as severe as the criteria for the Listing, the claimant meets the Listing. If the claimant's medical condition is not listed, but the medical findings are at least as severe as the criteria for the listed impairment that is most like the claimant's condition, it equals the Listing. 20 C.F.R. § 404.1526(a).

The claimant has the burden of proving that he meets or equals the criteria for a listed impairment based on medical evidence. *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990); *Tackett,* 180 F.3d at 1100; 20 C.F.R. § 404.1526. The claimant's description of symptoms is insufficient. 20 C.F.R. § 404.1529(b); SSR 86-8.

Mr. Wakefield claims his impairments meet or equal Listing 1.04, which refers to disorders of the spine resulting in compromise of a nerve root or the spinal cord. The severity requirements are found in three alternative sets of criteria. Mr. Wakefield contends he satisfies the criteria in paragraph B, which requires showing:

> Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours.

20 C.F.R. Pt. 404, Subpt P, App. 1 § 1.04B.

Mr. Wakefield failed to show that any element of these criteria existed at the time his insured status expired on March 31, 2002. On May 2, 2003, Todd Hamel, M.D., completed a questionnaire worksheet indicating that Mr. Wakefield needed a job "which permits shifting positions at will." Tr. 455. Mr. Wakefield argues that this statement is enough to satisfy the Listing because it describes essentially the same functional limitation as described in the Listing, that which "result[s] in the need for changes in position or posture more than once every 2 hours."

This argument cannot be sustained because there is no medical evidence of nerve root or spinal cord impingement, spinal arachnoiditis, severe burning or painful dysesthesia as required by the Listing. At the relevant time, the medical evidence showed degenerative disc disease in

7 - OPINION AND ORDER

the lumbar spine with slight disc bulge, but no radicular symptoms or other indication of nerve root or spinal cord impingement.  Tr. 307.  Dr. Hamel did not make medical findings equal in severity to the criteria for Listing 1.04.  He simply stated his opinion about Hamel's functional limitations.

Even if an opinion about functional limitations could be sufficient without establishing the medical criteria, Dr. Hamel's opinion came too late.  Dr. Hamel began treating Mr. Wakefield six months after his insured status expired and issued the opinion cited by Mr. Wakefield more than a year after his insured status expired.  The ALJ could reasonably give greater weight to contemporaneous medical evidence from the relevant time, and that evidence did not establish equivalence with Listing 1.04.

Mr. Wakefield asserts that the ALJ erred by failing to obtain the testimony of a medical expert on the question of equivalence.  An ALJ's determination at step three must be based on medical evidence that includes a medical judgment by one or more physicians designated by the Commissioner.  SSR 86-8.

The ALJ obtained the documented medical judgment of Disability Determination Services' (DDS) medical consultant Linda Jensen, M.D.  Dr. Jensen reviewed Mr. Wakefield's medical records and prepared an RFC assessment for the period from April 2002 until February 2003.  Tr. 437-42.  Such reports of DDS physicians satisfy the regulatory requirement.  SSR 86-8; 96-6p.

Mr. Wakefield argues that the ALJ should have called a medical expert to testify at the hearing because Dr. Hamel provided his opinion after Dr. Jensen prepared her RFC assessment.  An updated opinion from a medical expert may be appropriate if the ALJ believes that additional

medical evidence received after the DDS review could reasonably change the DDS reviewers' findings. SSR 96-6p. The ALJ could reasonably conclude that Dr. Hamel's opinion would not change Dr. Jensen's findings because it did not include findings that would satisfy the Listing and did not relate to the period she reviewed.

## II.    RFC Assessment

Mr. Wakefield contends the ALJ inaccurately assessed his RFC because he improperly discredited Mr. Wakefield's testimony, the opinions of two physicians and the statements of lay witnesses. He also asserts that the ALJ failed to comply with the requirements of SSR 96-8p.

### A.    Mr. Wakefield's Testimony

The ALJ found Mr. Wakefield's testimony generally credible regarding his claims of vocational limitations from medically determinable impairments. The ALJ accepted Mr. Wakefield's testimony regarding limitations in the ability to walk, sit, stand and lift and the claim that Mr. Wakefield needed to change positions while sitting. These limitations were reasonably supported by the medical evidence and the ALJ included them in his RFC assessment. Thus the ALJ rejected only Mr. Wakefield's assertion that these limitations left Mr. Wakefield unable to perform any kind of work.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). *See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

9 - OPINION AND ORDER

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id. See also* SSR 96-7p.

The ALJ considered proper factors and his credibility determination is supported by substantial evidence in the record as a whole. He found that the medical evidence did not establish impairments so severe as to preclude any work. The medical records include finding of generally mild degenerative disc disease in the lumbar spine. Tr. 284-85, 314, 382-83, 385, 393-95, 449. The findings of degenerative joint disease in both knees were moderately severe, but did not include restrictions on grossly normal function. Tr. 279, 393-95, 449. Images of the chest were generally normal. Tr. 315.

The ALJ found that the medical evaluations of Mr. Wakefield's functional capabilities indicated that he could work with appropriate limitations. For example, after an injury in October 1991, Carl Chen, M.D., released Mr. Wakefield to work without any restrictions. Tr. 281. Dr. Hamel opined that Mr. Wakefield would not have substantial difficulty with stamina, pain, fatigue or maintaining a normal pace if working full time at light or sedentary levels of exertion. Tr. 453. Gregory Wolf, M.D., opined that Mr. Wakefield's medical condition and treatment would cause him to miss work less than once per month. Tr. 465. As noted

previously, Dr. Jenson reviewed all the medical evidence from the relevant time and concluded that Mr. Wakefield could work with appropriate restrictions.

Mr. Wakefield asserts both degenerative conditions in his back and knees and residual effects from past traumatic injuries. The ALJ relied on Mr. Wakefield's work history to show that he continued to work after each of the traumatic injuries and subsequent surgeries. Together with the medical evaluations of mild to moderate degenerative changes, Mr. Wakefield's work history supports the ALJ's conclusion that his claim of total disability is not credible.

The ALJ also relied on Mr. Wakefield's report to Michael Kropf, M.D., in January 2002. Mr. Wakefield told Dr. Kropf that he had injured himself in September 2001 when he tripped while carrying a carpet. He recovered and did "OK" with conservative treatment, but "started to experience increased back pain with left buttock and left leg pain" in about December 2001. Tr. 307. He could not identify a precipitating factor for this increase in pain. Mr. Wakefield told Dr. Kropf "he plans to move up to the Oregon area and only wants to work about six months a year." Tr. 309. Dr. Kropf treated him conservatively with pain medication, and Mr. Wakefield was not interested in more aggressive treatment.

The ALJ could reasonably infer from Mr. Wakefield's statements that he believed he was capable of working a normal work schedule, but was not motivated to work year-round. The ALJ could reasonably find this inconsistent with Mr. Wakefield's claim that he has been completely disabled since September 2001.

Mr. Wakefield contends the ALJ failed to address his allegations of pain in the wrist and elbow, nausea, headaches and swelling in the legs. Mr. Wakefield failed to produce objective medical evidence of underlying impairments that could reasonably be expected to produce

severe pain in the left wrist and elbow. He argues that this testimony is supported by diagnostic images from November 1999, but these show only a "healed old fracture" with "no evidence of an acute process." Tr. 312-13. Robert Orflay, M.D., was unable to provide any anatomical diagnosis that would account for the symptoms Mr. Wakefield described. Tr. 448.

Mr. Wakefield failed to produce medical evidence of an impairment that would produce severe nausea. He relies on the treatment records of Haig Najarian, M.D., who saw Mr. Wakefield in November 1997. Dr. Najarian first suggested that Mr. Wakefield was "suffering from probable non-ulcer dyspesia and irritable bowel syndrome." Tr. 321. Later, after performing an endoscopic examination which was normal, he noted "we have not found any objective evidence to indicate the source of his chronic nausea and vomiting." Tr. 317-19, 325.

Similarly, Mr. Wakefield has not identified objective medical evidence of underlying impairments that could reasonably be expected to produce vocational limitations from headaches or swelling in the legs. An ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen*, 80 F.3d at 1281-82; *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). Accordingly, the ALJ was not required to perform any further analysis with respect to Mr. Wakefield's allegations of pain in the wrist and elbow, nausea, headaches or swelling in the legs.

For the reasons described, the ALJ had a legally adequate basis for discrediting Mr. Wakefield's claim that he has been unable to do any kind of work since September 2001. The ALJ's findings are sufficiently specific to permit this court to conclude that he did not do so arbitrarily. *Dodrill*, 12 F.3d at 918; *Smolen*, 80 F.3d at 1283; *Orteza*, 50 F.3d at 750.

**B.   Medical Source Statements**

Mr. Wakefield contends the ALJ improperly rejected the opinions of Dr. Hamel and Dr. Wolf.  Dr. Wolf treated Mr. Wakefield for a variety of ailments in the period from 1997 to June 2002.  Dr. Hamel began treating Mr. Wakefield in September 2002.

A treating physician's opinion is given great weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record.  20 C.F.R. § 404.1527(d)(2); *See Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993).  If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it for clear and convincing reasons.  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).  The ALJ can reject the treating physician's opinion in favor of the conflicting opinion of another physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*. at 957, quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Hamel treated Mr. Wakefield beginning six months after his insured status expired.  On May 3, 2003, he completed a worksheet prepared by Mr. Wakefield's counsel regarding Mr. Wakefield's functional limitations.  Tr. 451-57.  The ALJ found Dr. Hamel's statement entitled to little weight because he did not treat Mr. Wakefield during the time that is relevant for his claim.  Nonetheless, the ALJ's findings were consistent with most of Dr. Hamel's findings.

For example, Dr. Hamel and the ALJ both found that Mr. Wakefield would have significant vocational limitations in such functions as lifting, standing, walking, sitting, bending, stooping and crouching.  Both reached the conclusion that Mr. Wakefield could work full-time at some kind of job.  Dr. Hamel opined that it was not reasonable to expect that Mr. Wakefield

13 - OPINION AND ORDER

would experience substantial difficulty with stamina, pain or fatigue or would need to work at a reduced pace if he worked full time at light or sedentary work.  Tr. 453.

The ALJ's findings differed with Dr. Hamel's opinion in some respects.  For example, Dr. Hamel found that Mr. Wakefield's maximum lifting capacity was less than 10 pounds frequently and 10 pounds occasionally.  Tr. 455.  The ALJ's findings were 10 pounds frequently and 20 pounds occasionally.  Tr. 21.  Dr. Hamel found that Mr. Wakefield needed to walk around for 5 minutes every 30 minutes of an 8 hour workday.  Tr. 454.  The ALJ found that he needed to alternate between sitting, standing and walking, but did not specify the need to walk at certain intervals.  Tr. 21.  Dr. Hamel opined that Mr. Wakefield had significant limitations in reaching, handling and fingering, which the ALJ did not find.  Tr. 456.

The ALJ considered Dr. Hamel's assessment but accorded it little weight because:

> Dr. Hamel did not begin to treat the claimant until September 2002
> - after the claimant's date last insured, relied almost entirely on the
> claimant's subjective complaints, and failed to obtain any of the
> claimant's other treatment records from his prior providers.

Tr. 20.

These reasons provide a sufficient basis for the ALJ to discount Dr. Hamel's findings.  Dr. Hamel's findings cannot be given great weight because they are based on subjective reports rather than clinical findings.  Dr. Hamel's treatment notes do not reflect that he performed any physical capacity assessment to reach his conclusions or consulted the records of Mr. Wakefield's prior providers.  Accordingly, the ALJ could reasonably conclude that Dr. Hamel's opinion was based on Mr. Wakefield's subjective description of his symptoms and medical history.

An ALJ can properly reject a physician's opinion that is premised on the claimant's subjective statements which the ALJ has properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). He need not accept a treating physician's statement that is conclusory and unsupported by clinical findings. *Id.*; *Batson*, 359 F.3d at 1195.

In February 2004, Dr. Wolf completed a worksheet prepared by Mr. Wakefield's counsel regarding Mr. Wakefield's ability to perform work-related activities. Tr. 459-66. The ALJ gave little weight to the worksheet, because he found it unsupported by Dr. Wolf's own findings and inconsistent with the record. Tr. 21.

Dr. Wolf indicated that Mr. Wakefield would have severe lifting restrictions, but his treatment notes do not reflect any clinical testing of Mr. Wakefield's physical capacities. Tr. 326-57, 464. He found that Mr. Wakefield would be likely to experience difficulty with stamina, pain or fatigue and would need to work at a reduced pace if he worked full time. Tr. 461. No clinical findings support this and, as noted previously, Drs. Hamel and Jenson reached the opposite conclusion.

Dr. Wolf indicated that Mr. Wakefield had been "continuously unable to work" since 1997, but Mr. Wakefield worked through September 2001 and does not allege disability before that time. Tr. 466. Contrary to his apparent disability opinion, Dr. Wolf indicated that Mr. Wakefield's medical condition would cause him to be absent from work "less than once per month." Tr. 465. In addition to these internal inconsistencies, Dr. Wolf's opinion suggested a lack of familiarity with his patient. Dr. Wolf was not aware of any current or past substance

abuse, but Dr. Hamel's examinations and Mr. Wakefield's admissions reveal a recent history of methamphetamine abuse.  Tr. 424-25, 429-32.

Because Dr. Wolf's worksheet was not supported by clinical findings and is inconsistent with the record as a whole, the ALJ was entitled to give it little weight.  *Tonapetyan*, 242 F.3d at 1149; *Batson*, 359 F.3d at 1195.

Mr. Wakefield argues that the ALJ erred by failing to recontact Dr. Hamel and Dr. Wolf. The regulations require an ALJ to recontact a physician when the evidence "is inadequate for us to determine whether you are disabled."  20 C.F.R. § 404.1512(e).  The requirement to obtain additional information is triggered only when the evidence is inadequate to make a determination as to the claimant's disability.  *Thomas*, 278 F.3d at 958.  The ALJ did not find the evidence inadequate to make the determination that Mr. Wakefield was not disabled.  He considered appropriate factors and drew reasonable conclusions from the various medical opinions in accordance with *Thomas*, *Batson*, and similar cases.  The ALJ had no further duty under 20 C.F.R. § 404.1512(e).

### C.    Lay Witness Statements

Mr. Wakefield contends the ALJ improperly rejected the testimony of his wife and the written statements of his wife, mother, uncle and stepfather.  He does not identify specific statements or explain how the statements establish that he is disabled, but argues nonetheless that they must be credited as true.

Family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition.  *Dodrill*, 12 F.3d at 918.  Such testimony cannot be disregarded without comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

The ALJ did not reject the lay witness statements without comment. He found them generally credible in their descriptions of observed behavior demonstrated by Mr. Wakefield. The lay witnesses indicated that Mr. Wakefield needs to alternate frequently from sitting to standing to walking. Tr. 69, 234. The ALJ included a limitation reasonably consistent with these statements in his RFC assessment. He did not accept their opinions about Mr. Wakefield's functional limitations that were unsupported by the totality of the medical evidence. Tr. 21.

Mr. Wakefield's wife testified that he had difficulty getting dressed and tying his shoelaces "about half the time," because his wrist would give out. Tr. 64. No medical provider made findings that would support a basis for this. Dr. Orflay found no anatomical basis for the symptoms Mr. Wakefield described regarding his wrist. Tr. 448. The ALJ believed that Mr. Wakefield demonstrated wrist problems to his wife and that she credibly described his behavior. He did not accept that it was a medically determinable impairment.

Mr. Wakefield's wife testified that he could not walk more than two city blocks before stopping to rest. Tr. 64. Dr. Hamel indicated that Mr. Wakefield could walk a total of six hours in an eight-hour day if permitted to alternate sitting, standing and walking. Tr. 454-55. Mr. Wakefield's wife testified that he lacked the upper body strength to lift anything. Tr. 65. Dr. Hamel opined that he could lift up to 10 pounds frequently. Tr. 455.

Mr. Wakefield's wife testified that he has crying spells and irritability. Tr. 67-68. His mother indicated in her written statement that he has difficulty initiating social contacts and suffers from depression. Tr. 230-31. No medical source has diagnosed a condition that would

17 - OPINION AND ORDER

result in these symptoms, there is no record evidence that Mr. Wakefield has ever been treated for them and they are not among the conditions he alleged as the reason he cannot work.

Mr. Wakefield's uncle and stepfather gave similar written statements describing similar observations. Tr. 237-52. The ALJ was not required to accept them to the extent they were inconsistent with the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 510-12. (9th Cir. 2001).

In summary, the ALJ applied proper legal standards in assessing the lay witness statements. He found them credible in describing their observations but did not credit their opinions that were not supported by the medical evidence. He did not reject their statements without comment but noted germane reasons. Even if he did not clearly link his determination to those reasons, substantial evidence supports his decision to discount the family members' statements. *Lewis*, 236 F.3d at 512.

### D.   Compliance With SSR 96-8p

Mr. Wakefield contends the ALJ did not comply with SSR 96-8p because he allegedly failed to consider Mr. Wakefield's ability to work on a regular and continuing sustained basis and the impact of non-severe impairments and side effects of medications on Mr. Wakefield's functional abilities.

A claimant's RFC is an administrative assessment of the claimant's maximum remaining ability to do sustained work activities on a regular and continuing basis where "regular and continuing basis" means 8 hours a day, 5 days a week or an equivalent work schedule. SSR 96-8p. The ALJ considered all the evidence and reached the RFC assessment quoted previously. Mr. Wakefield has not identified evidence that the ALJ failed to consider or presented any other

basis for concluding that the ALJ failed to consider his ability to do sustained work activities on a regular and continuing basis.

The RFC assessment must account for all vocationally relevant functional limitations, even if they are caused by non-severe impairments or side effects of treatment. 20 C.F.R. § 404.1523. The ALJ's decision reflects that he considered all the evidence of functional limitations and incorporated into his RFC assessment those functional limitations that were reasonably supported by the evidence. By evaluating all evidence of functional limitations, the ALJ properly considered the combined effect of severe and non-severe impairments and functional limitations resulting from medications.

### III.    Compliance with SSR 83-20

Mr. Wakefield contends the ALJ failed to comply with SSR 83-20 because he did not call a medical expert to infer the onset of disability. SSR 83-20 provides that an ALJ must call a medical expert to assist in determining the onset of disability if the claimant is found disabled and the evidence regarding the onset of disability is unclear or ambiguous. *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). The ALJ was not required to consult a medical expert or infer the onset of disability because he did not find Mr. Wakefield disabled.

### IV.    Work in the National Economy

At step five, the burden shifts to the Commissioner to show that work exists in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett*, 180 F.3d at 1098; *Andrews*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of

the claimant. *Id.* The assumptions in the hypothetical question must be supported by substantial evidence. *Id.*

Mr. Wakefield challenges the ALJ's determination in step five on three grounds. First, he argues that the hypothetical question was incomplete because it failed to include functional limitations described in Dr. Hamel's worksheet, Mr. Wakefield's testimony and the statements of Mr. Wakefield's wife. The ALJ properly evaluated this evidence as described above. The RFC assessment he reached is supported by substantial evidence in the record as a whole and he elicited testimony from the VE based on a hypothetical question that accurately reflected his RFC assessment. Because the ALJ did not find the additional limitations asserted by Mr. Wakefield supported by the record, it was not error for him to exclude them from his hypothetical question. *Magallanes*, 881 F.2d at 756-57; *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001).

Second, Mr. Wakefield challenges the VE's testimony that a significant number of jobs exist in the national economy in the occupations of telephone solicitor and surveillance system monitor. Tr. 72. Mr. Wakefield contends this testimony lacked foundation and should be disregarded under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court ruled on the prerequisites for admissibility in federal trials of purported scientific evidence under Rule 702 of the Federal Rules of Evidence. *Id.* Under Rule 702, a district court judge must ensure that a purported expert's opinion rests on a reliable foundation and is relevant. *Id.* Mr. Wakefield contends the VE's testimony regarding the number of jobs in each occupation is inadmissible because the ALJ did not ensure that it was based on a reliable foundation.

20 - OPINION AND ORDER

Mr. Wakefield's argument cannot be sustained because *Daubert* and Rule 702 have no application in the context of administrative hearings before an ALJ. An ALJ may receive evidence at such hearings even though the evidence would not be admissible in court under the rules of evidence used by the court. 20 C.F.R. § 404.950 (c).

Third, Mr. Wakefield contends the ALJ improperly ignored letters he submitted from the U.S. Department of Labor Bureau of Labor Statistics, Oregon Employment Department Occupational Employment Statistics Coordinator and the U.S. Department of Commerce Census Bureau. Tr. 178-82. These agencies indicated that they do not publish data on the number of jobs estimated or projected in the economy by occupation. *Id.*

The ALJ is permitted to rely on the testimony of a VE and may take administrative notice of "reliable job information available from various government and other publications." 20 C.F.R. § 404.1566; SSR 00-4p. Where there are apparent conflicts between the VE testimony and the published data, the ALJ must resolve the conflicts. SSR 00-4p.

Here there is no apparent conflict. The letters on their face do not contain information that could conflict with the VE's testimony about the number of jobs in the sample occupations. They state that the agencies do not have such information. Under these circumstances, it was not error for the ALJ to rely on the VE's testimony.

In summary, the ALJ elicited testimony from the VE based on hypothetical limitations that reflected his RFC assessment. None of the challenges to the ALJ's RFC assessment has merit. The ALJ's conclusion that Mr. Wakefield retains the RFC to work in the national economy as a telephone solicitor or surveillance system monitor is sustained. The VE's

testimony that there are a significant number of jobs in the national economy in these occupations provides an adequate basis for the ALJ's conclusion.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision that Mr. Wakefield did not suffer from a disability on or before March 31, 2002, and is not entitled to benefits under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this 11th day of January, 2006.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge